IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
(White Plains Division)

| | |
|---|---|
| METRA INDUSTRIES, INC. ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ROCKLAND COUNTY, New York ) <br> ) <br> <u>Serve</u>:  Corporation Service Company ) <br>   (Registered Agent) ) <br>   327 Hillsborough Street ) <br>   Raleigh, North Carolina, 27603 ) <br> ) <br> Defendant. ) <br> ) | Case No. _____ |

## **COMPLAINT**

Plaintiff, Metra Industries, Inc. ("Metra"), by counsel, and for its causes of action against Defendant Rockland County, New York ("Rockland County" or the "County") complains and alleges as follows:

## **NATURE OF ACTION**

1. This action arises out of Defendant Rockland County's continuing failure and refusal to pay Plaintiff for its construction of a project known as the "Pascack Brook Bypass Culvert" located in the Village of Spring Valley, town of Ramapo, Rockland County, New York. The Pascack Brook Bypass Culvert Project (the "Project") was approved by the Rockland County legislature on August 6, 2013 in order to alleviate a long-running flooding problem for more than 80 Spring Valley homeowners.

2. Although the Project achieved substantial completion on October 1, 2015 (and Rockland County has enjoyed the benefit of the Project since then), Rockland County, acting through the Rockland County Drainage Authority ("RCDA"), refuses to close out the contract or to pay Metra its remaining contract balance. Rockland County has similarly breached its contractual obligation to pay for the extra work that Metra was required to perform, let alone for the additional costs resulting from County-caused delay.

3. At Metra's request, the parties met on November 22, 2016 in an attempt to resolve all outstanding claims relating to the Project. The parties agreed that, if that meeting and the discussions that followed did not result in a resolution of Metra's claims, the contractual disputes process would be deemed complete as provided for in Section 105-14H.3 of the Contract.

4. The November 22, 2016 meeting did not resolve the issues in dispute and the contractual disputes process, therefore, has been exhausted. All conditions precedent to Metra's right to pursue legal relief concerning the claims asserted herein also have been met.

**PARTIES**

5. Plaintiff Metra is a corporation duly organized and existing under the laws of the State of New Jersey. Metra has its principal place of business at 50 Muller Place, Little Falls, New Jersey.

6. Upon information and belief, Defendant Rockland County is a municipal corporation organized and existing under the laws of the State of New York.

**JURISDICTION AND VENUE**

7. This Court possesses original jurisdiction over this action pursuant to 28 U.S.C. § 1332 (Diversity of Citizenship) because the matter in controversy exceeds $75,000, exclusive of costs and interest, and there is complete diversity of citizenship between the parties.

8. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) and/or (b)(3) as the Project is located in this District and the events relating to Rockland County's non-payment for its work occurred in this District.

9. Defendant Rockland County is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

10. On September 3, 2013, Rockland County and Metra entered into a contract (the "Contract") whereby Metra was to construct the Pascack Brook Bypass Culvert in accordance with the design plans and specifications. The Contract itself is voluminous and, due to its size and the fact that it is already in Defendant's possession, the Contract is not attached to this Complaint.

11. The Contract was administered on behalf of the County by the RCDA.

12. The contract had a defined scope of work and called for Metra to furnish and install approximately 1,572 lineal feet of 15' x 7' precast box culverts, 38 precast sewer manholes, 2,761 feet of PVC gravity sewer pipe (predominantly 36-inch and 24-inch diameter), two sanitary siphon chambers, and all drainage structures (inlets and manholes). This work was to be undertaken in accordance with the Project design that Rockland County provided to Metra as part of the bid package.

13. Metra relied upon the correctness of the Contract, along with the correctness of the plans and specifications that were made a part of this Contract.

14. During the course of the Project, Rockland County, acting through the RCDA, directed changes to the work, which modified and increased the scope of work being performed by Metra.

15. Consistent with the express terms of the Contract, Metra understood that, to the extent that it was required to perform work that was not included in its original scope, Metra would be compensated.

16. After construction was underway, Metra was continually required to perform extra work under the Contract. The requirement to perform extra work arose before, during and after installation of the box culverts. In good faith, Metra proceeded with the extra work as directed and provided numerous notifications to Rockland County (through RCDA) that extra work was being performed.

17. Metra continued with the faithful completion of the Project despite (i) Rockland County's disregard of its contractual commitments to pay Metra for regular contract work; (ii) Rockland County's disregard of its contractual commitments to pay Metra for the wrongfully withheld $426,741.50 in earned retention); (iii) the County's failure to pay Metra for the extra work that Metra was required to perform; and (iv) the County's refusal to close-out the contract or otherwise honor its obligation to reimburse Metra for the additional amounts due under the Contract.

18. Rockland County owes Metra in excess of $1,170,374 under the Contract with the specific amount of Metra's damages to be proven at trial. Metra's damages are broken down into the following major components.

A. **Wrongfully Withheld Retainage**

19. During the course of the Project, and over Metra's objection, Rockland County arbitrarily deducted 5% from each progress payment as retainage. All told, Rockland County has taken and is holding $426,741.50 in retainage despite Metra's completion of the work.

20. The Project is governed by the New York State Department of Transportation ("NYSDOT") Specifications and Requirements which clearly state that no retainage may be taken from the County's progress payments to Metra. NYSDOT Specification Section 109.03 "Scope of Payment" states that payments will be made in accordance with New York State Finance Law. Chapter 12 of the NYSDOT Construction Contract Requirements states: "12.4.2. Retainage Provisions: In accordance with New York State Finance Law, Section 139-f, NYSDOT does not hold retainage."

21. Metra has repeatedly communicated to Rockland County (both in writing and verbally) that five percent retainage was not agreed upon in the Contract and never should have been withheld from progress payments in the first instance.

22. Among other communications on this issue, on March 4, 2016, Metra filed a formal Notice of Dispute citing the specific provisions of the Contract supporting its ongoing right to receive the wrongfully withheld retainage.

23. Metra worked on this Project for 23-months without any claims from the County. Now, however, Rockland County seeks to justify its withholding of Metra's retention based upon the County's supposed need to protect itself from lien claims from unpaid subcontractors – namely, B&B Concrete Enterprises ("B&B") and Anchor Fence. Claims by these subcontractors came only after almost all of the Contractual work had been completed with these claims being a

byproduct of the subcontractors' retention monies also being impacted by the County's improper withholding of retention from Metra.

24. The County ignores the fact that Metra was required to post both performance and payment bonds that fully protect Rockland County from any potential claims. Also, the County began withholding retainage at the beginning of the job and not with the occurrence of any public lien. Regardless, Metra posted a lien bonds that protected the lien claimants and removed any obligation on the County's part to withhold contract sums to assure the availability of funds to pay the lien amounts, if determined by a court that such amounts were due and owing.

25. Metra confirmed in writing to the County that B&B would release its lien in return for payment of its retainage in the amount of $32,498.13. The County finally agreed to release the funds to B&B on October 18, 2016, asking Metra for confirmation of the amount owed. Metra confirmed that the amount owed was indeed $32,498.13 and that B&B would release its liens in exchange for payment in this amount. The County circulated a proposed joint check agreement on January 10, 2016 which Metra and B&B agreed to subject to very minor edits. Nonetheless, the County continues to hold Metra's money that is earmarked for B&B due to their protracted review of the joint check agreement.

26. The County's withholding of funds based upon Anchor Fence's lien is even more egregious. On March 10, 2016, Metra made a payment against the amount claimed by Anchor with the County being copied on that correspondence. This payment left an alleged balance of $10,878.80, which is in dispute.

27. With respect to the disputed amount being sought by Anchor Fence, Metra posted a $15,845.50 lien bond. The lien bond is the guaranty for payment of any monies determined to

be owed by Metra to Anchor. In other words, because a bond is in place, Anchor has no claim against the County for monies owed it by Metra.

28. With both a lien bond and a payment bond in place, the County's reference to the threat of subcontractor lien claims as justification for keeping Metra's money is entirely specious.

29. With the alleged threat of subcontractor liens having no basis, the County still claims that it is entitled to withhold $426,741.50 in retention. The only contractual claim raised by the County is for inspection costs totaling $93,427.15 allegedly incurred to observe the construction during overtime work hours.

30. The alleged overtime costs supposedly were charged by Bill Luchkew (inspector) and Boris Vays (Project Engineer). As an initial matter, the Contract provides for charges relating to "inspectors," not "engineers." Further, Metra has reviewed these charges and notes that the vast majority of the charges were incurred when Metra's own crews had no overtime charges or while Metra was performing change order work in which case overtime charges would be compensable to Metra with contractually allowed markup for overhead and profit as a component of the extra work being performed. In other words, the County is charging Metra for the costs to inspect work being performed by Metra construction crews that were not even there or for extra costs incurred in performing change order work.

31. As detailed below, Metra did work overtime on the Project in order to address all of the extra work that it was required to perform. If the County charges Metra for the inspector's overtime to oversee this extra work, then Metra is entitled to recover the premium time wages paid to its personnel who worked overtime while performing this work.

### B. Interest on Wrongfully Withheld Retainage

32. NYSDOT Specification Section 109.03 "Scope of Payment" states that payments will be made in accordance with New York State Finance Law. Section 139-f of the New York State Finance Law provides that the County shall pay interest on unpaid contract amounts unless the failure to make such contract payment is the result of a lien or attachment. As described above, the liens themselves were a byproduct of Rockland County's failure to release retention and, in any event, those liens have been bonded off. Accordingly, the County is fully protected and it has no right to withhold retention.

33. Pursuant to Section 179-g of the New York State Finance Law, "interest payments on amounts due to a contractor pursuant to this article shall be paid to the contractor for the period beginning on the day after the required payment date and ending on the payment date for those payments…"

34. Because the County is still withholding retention (and other contract amounts due Metra under the Contract), the ending date for calculating interest on unpaid contract balances cannot be determined at this time. As of the filing of this complaint, however, the amount of interest due Metra on unpaid retention alone is in excess of $67,000.

### C. Acceleration Required by Extra Work Items and Related County-Caused Delay and Disruption

35. The baseline schedule, which the County approved on November 1, 2013, showed a Project duration of 550 days. The County issued Metra the Notice to Proceed on November 14, 2013, which, after adding the 550 days, results in a contract completion date of May 18, 2015.

36. Metra's ability to complete the work within that timeframe was severely disrupted and impacted by virtue of differing site conditions, errors in the County's Project design, items

of extra work required by Rockland County, and delayed County approvals. Examples of the differing site conditions design changes, and extra work that Metra was forced to perform include:

   a) The differing site condition encountered at the intersection of Stone House Drive and Clayton Drive. Metra attempted to install the 36-inch gravity sewer line as shown on the plans only to find that there was an existing 6-inch water main at the exact same line and grade. Metra notified the County of this design error but Metra's resulting costs and delays were never compensated.

   b) Building an entirely new bridge at Union Road;

   c) Changing all sideline drain piping for the precast box culvert from 6-inch to 12-inch (this, in turn, affected the catch basins, pipe and box culvert);

   d) Reduction of the 8-inch, 24-inch, and 36-inch sewer pipe footages through manhole covers;

   e) Repairing the County's leaking water mains at the Anthony and King Terrace intersection (repairing the City's water main was not in Metra's scope);

   f) Modifying, repairing and rebuilding an existing 72-inch storm drain on Morris Road;

   g) Requiring Metra to pay for utility pole relocations despite the County's commitment that there would not be any utility pole relocations on this project;

   h) Extra-contractual vacuum testing of the siphon chambers;

   i) Changing from full road closure to partial road closure (necessitating flagmen and additional traffic control costs); and

   j) Removal of all tree stumps (in lieu of grinding the stumps as allowed by the Contract).

37.    Compounding the delay associated from performing work that was never in Metra's scope, Rockland County protracted the approval duration for critical submittals, such as precast concrete sewer manholes, siphon chamber manholes, and the precast box culvert. Months of County-caused delay associated with the approval of the precast manholes resulted in a corresponding delay to the completion of utility work and, thereafter, the box culvert itself.

38. These delays shifted the timeframe for constructing the box culvert completion into the colder winter months. This, in turn, delayed and impacted the weather sensitive installation of a required membrane in the box culvert joints, as well as the placement of mortar/concrete across the joints. It also shifted the completion of the road, driveway, and sidewalk paving into an additional spring/summer period.

39. Throughout the course of this Project, Metra made numerous time extension requests both verbally and in writing. Rockland County denied all such requests.

40. With the County refusing to grant any time extensions for these delays, the County directed Metra to submit a schedule that compressed, or "accelerated," the remaining activities into the original, unadjusted 550-day schedule.

41. By letter dated April 1, 2014, Metra provided Rockland County with the acceleration schedule demanded by the County. In so doing, Metra notified the County that "overtime hours will be worked" and that "Metra reserves any and all rights to claim added costs as a result of said acceleration."

42. Metra's acceleration efforts included resequencing its work activities, changing its planned means and methods, bringing in additional crews and equipment and working substantial overtime. These measures were necessitated by the County's extra-contractual work restrictions, design flaws, errors and omissions, differing site conditions, changes, and extra work.

43. Despite Metra's full performance of the Contract, Rockland County continues to fail to pay Metra its Contract balances as well as amounts due for out of scope work and for additional costs attributable to Rockland County's delays, errors and omissions.

44. Metra has incurred in excess of $311,000 in damages as result of County-caused delays and disruptions, with the specific amount of such damages to be proven at trial.

## COUNT I
### (Breach of Contract)

45. Metra repeats and realleges the allegations contained in paragraphs 1 thru 44 as if set forth at length herein.

46. Rockland County and Metra entered into a valid and enforceable Contract for the Pascack Brook Bypass Culvert Project.

47. Rockland County breached the express and implied terms of the Contract in, among other things, the following respects:

  a) Failing and refusing to fully pay Metra all amounts owed to Metra under the Agreement;

  b) Interfering with, disrupting, and hindering Metra's prosecution of work on the Project;

  c) Issuing Contract Documents that were misleading, incomplete, inaccurate and/or defective;

  e) Failing to timely and sufficiently administer the Project;

  f) Requiring labor, services, equipment, and materials other than those prescribed by the Agreement without proper compensation;

  g) Requiring the acceleration and re-sequencing of Metra's work without appropriate compensation; and

  h) Failing to equitably adjust the Contract pricing and time to compensate Metra for delays, interruptions, obstructions, hindrances and changed and/or extra work caused by the actions and/or inactions of Rockland County or their agents and representatives.

48. Metra performed all conditions precedent to the Contract, except insofar as such conditions have been excused or waived by Rockland County.

49.     By failing to make the payments required under the Contract, and by requiring Metra to accelerate the work to overcome the County's own extra work directives, obstructions and delays, Rockland County has materially breached the Contract.

50.     As a direct and proximate result of Rockland County's breach of the Contract, Metra has suffered, and continues to suffer, damages (exclusive of delay and acceleration damages) of at least $859,000.  Additionally, because of County-caused delay and the requirement that Metra accelerate the work to overcome this Owner-caused delay, Metra has incurred substantial acceleration and delay damages estimated at $311,000 with the specific amount to proven at trial.

WHEREFORE, Metra respectfully requests judgment against Rockland County in a sum of $1,170,000 with the specific amount to be proven at trial.  Metra further requests prejudgment and post-judgment interest, attorney's fees, costs and such other further relief as the Court may deem just and proper.

## COUNT II
### (Quantum Meruit)

51.     Metra re-alleges and reincorporates the allegations contained in Paragraphs 1 through 44 above.

52.     Count II of this Complaint is pled in the alternative to Count I, and only to the extent that this Court may find the Contract between Metra and Rockland County is unenforceable or that Metra's rights are extra-contractual.

53.     Metra incurred costs performing the Pascack Brook Bypass Culvert Project, which benefitted Rockland County and protected Spring Valley homeowners from potential flooding.

54. Rockland County was fully aware of all work performed by Metra on the County's property and the work performed by Metra was at Rockland County's direction.

55. By performing work as directed by the County, Metra conferred a benefit on Rockland County by performing a valuable public works project benefitting Rockland County and its residents.

56. Rockland County was fully aware of the benefits that Metra was conferring upon the County through Metra's performance.

57. All of the work and services provided by Metra were rendered under such circumstances that Rockland County knew that Metra expected to be paid.

58. Rockland County has failed to pay for all the costs incurred and work performed by Metra on the property.

59. As a direct and proximate result of Metra's work, Rockland County has received a substantial benefit for which Metra is entitled to be compensated.

60. Rockland County's acceptance and retention of the services performed by Metra without proper remuneration and payment for their value is inequitable leading to an unjust enrichment conferred upon Rockland County.

61. The reasonable value of work that Metra performed (but for which it is has not yet been paid) is in excess of $1,170,000 with the specific value of that work to be proven at trial.

WHEREFORE, Metra respectfully requests judgment against Rockland County in a sum not less than $1,170,000, the specific amount to be proven at trial, together with prejudgment and post-judgment interest, attorney's fees, costs and such other further relief as the Court may deem just and proper.

## COUNT III
### (Unjust Enrichment)

62. Metra re-alleges and reincorporates the allegations contained in Paragraphs 1 through 44 above.

63. Count III of this Complaint is pled in the alternative to Count I and only to the extent that this Court may find the Contract between Rockland County and Metra unenforceable or that Metra's rights are extra-contractual.

64. Metra incurred costs performing the Pascack Brook Bypass Culvert Project, which benefitted Rockland County and protected Spring Valley homeowners from potential flooding.

65. Rockland County was fully aware of all work performed by Metra on the property and the work performed by Metra was at Rockland County's direction.

66. By performing work as directed by Rockland County, Metra conferred a benefit on Rockland County by performing a valuable public works drainage improvement project.

67. Rockland County was fully aware of the benefits that Metra was conferring upon Rockland County through Metra's performance.

68. All of the work and services provided by Metra were rendered under such circumstances that Rockland County knew that Metra expected to be paid.

69. Rockland County has failed to pay for the fair and reasonable costs that Metra incurred in connection with the Project.

70. As a direct and proximate result of Metra's work, Rockland County has received a substantial benefit and has been unjustly enriched by Metra's services. Metra is entitled to be compensated for the fair and reasonable value of all such unpaid services.

71. Rockland County's acceptance and retention of the services performed by Metra without proper remuneration and payment for their value is inequitable leading to an unjust enrichment conferred upon Rockland County.

72. The reasonable value of the work performed by Metra (and for which Metra has not yet been paid) is in excess of $1,170,000 with the specific value of that work to be proven at trial.

WHEREFORE, Metra respectfully requests judgment against Rockland County in a sum not less than $1,170,000 the specific amount to be proven at trial, together with prejudgment and post-judgment interest, attorney's fees, costs and such other further relief as the Court may deem just and proper.

Dated:   May 11, 2017                              Respectfully submitted,

**METRA INDUSTRIES, INC.**

By: *Peter M. Kutil*

Peter M. Kutil
King & King LLP
629 Fifth Avenue Bldg #3
Pelham, NY  10803
(914) 380-5974 (telephone)
(718) 275-5081 (facsimilse)
pkutil@king-king-law.com

Lewis J. Baker (VSB No. 30881)
C. William Groscup (VSB No. 34565)
Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
1765 Greensboro Station Place, Suite 1000
McLean, Virginia 22102
(703) 749-1000  (telephone)
(703) 893-8029  (facsimile)
lbaker@ watttieder.com
wgroscup@watttieder.com

*Counsel for Plaintiff Metra Industries, Inc.*