UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

METRA INDUSTRIES, INC.,

         Plaintiff,

 -v-

ROCKLAND COUNTY,

         Defendant.

No. 17-CV-3537 (KMK)

OPINION & ORDER

Appearances:

Lewis J. Baker, Esq.
C. William Groscup
Watt Tieder Hoffar & Fitzgerald LLP
McLean, VA
*Counsel for Plaintiff*

Peter M. Kutil, Esq.
King & King LLP
Long Island City, NY
*Counsel for Plaintiff*

Matthew G. Parisi, Esq.
Bleakley Platt & Schmidt LLP
White Plains, NY
*Counsel for Defendant*

Thomas E. Humbach, Esq.
New City, NY
County of Rockland Department of Law
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

  Plaintiff Metra Industries, Inc., ("Plaintiff") brings this Action against Defendant Rockland County, New York (the "County" or "Defendant"), alleging that Defendant has breached its contractual obligations in refusing to pay for work Plaintiff was contracted to

perform. (*See* Compl. (Dkt. No. 1).) Before the Court is Plaintiff's Motion for Partial Summary Judgment as related to the release of the $300,816.22 in retainage alleged to be due to Plaintiff under the contract. (*See* Dkt. No. 24.) For the reasons to follow, the Motion is denied.

## I. Background

### A. Factual Background

In resolving Plaintiff's Motion for Partial Summary Judgment, the Court will recite only either undisputed facts or those set forth by Defendant and supported by the record. The Court will not, except as noted, set forth Plaintiff's version of the facts where disputed.

On September 3, 2013, the Parties entered into a contract (the "Contract") pursuant to which Plaintiff was selected as the general contractor for the County's Pascack Brook Bypass Culvert Project (the "Project"). (*See* Pl.'s Local Rule 56.1 Statement of Material Facts ("Pl.'s 56.1") ¶ 2 (Dkt. No. 26); Def.'s Counterstatement to Pl.'s Rule 56.1 Statement of Material Facts ("Def.'s 56.1 Resp.") ¶ 2 (Dkt. No. 28); Aff. of Kent Rigg ("Rigg Aff.") ¶ 3 (Dkt. No. 28).) Pursuant to the Contract, Plaintiff was to "furnish and install approximately 1,572 lineal feet of 15' x 7' precast box culverts, 38 precast sewer manholes, 2,761 feet of PVC gravity sewer pipe . . . , two sanitary siphon chambers, all drainage structures[,] . . . and edge-to-edge road reconstruction." (Pl.'s 56.1 ¶ 4; Def.'s 56.1 Resp. ¶ 4.) The Contract specified that Plaintiff would be paid an amount not to exceed $8,900,000. (*See* Rigg Aff. ¶ 5.)

The Contract incorporated by reference the Project Specifications and Addendums issued by the County, (*see id.* ¶ 6), which were incorporated as revised on May 23, 2013 (the "Revised Specifications"), (*see id.*). The Revised Specifications specifically allowed for the County to retain five percent from the monthly payments to Plaintiff until the completion and acceptance of

all work covered by the Contract. (*See id.* ¶ 7; Pl.'s 56.1 ¶ 7.) Under the Contract, the County would make its final payment, including the retainage amount, once Plaintiff furnished the following documents: (1) Agreement of Surety Company to Final Payment; (2) Contractors Affidavit of Payment; (3) Certificate of Substantial Completion; and (4) General Release. (*See* Rigg Aff. Ex. 1 ("Revised Specifications") at 28.)

As the work was done on the Project, Plaintiff submitted monthly payment applications to the County on the County's "Standard Voucher Form," in accordance with the terms of the Contract, less the five percent retainage. (Pl.'s 56.1 ¶¶ 6–7; Def.'s 56.1 Resp. ¶¶ 6–7.) The Parties agree that over the course of nearly two years, Plaintiff submitted twenty-three payment applications for a total amount of $8,534,829.95, concluding on November 30, 2015. (*See* Pl.'s 56.1 ¶¶ 8, 10; Def.'s 56.1 Resp. ¶¶ 8, 10.) Of this amount, the County paid Plaintiff a total of $8,108,088.45, while the County retained $426,741.50 pursuant to the Contract's retainage provision. (*See* Pl.'s 56.1 ¶ 11; Def.'s 56.1 Resp. ¶ 11.)

It is not in dispute that, aside from later clashes over watering and tree maintenance, Metra's work on the Project was completed as of the November 30, 2015 payment application, and that there has been no further work to be done under the Contract since that date. (*See* Pl.'s 56.1 ¶¶ 15–17; Def.'s 56.1 Resp. ¶¶ 15–17.) Indeed, the Parties agreed, pursuant to the issuance of the Certificate of Substantial Completion on June 1, 2016, that the work performed under the Contract was retroactively substantially complete as of October 1, 2015. (Aff. of Stephan P. Dioslaki, Esq. ("Dioslaki Aff.") Ex. G ("Certificate of Substantial Completion") (Dkt. No. 27).)

Yet, the County has continued to withhold the retainage amount for reasons that are in dispute. Plaintiff contends that the County's position is that it is withholding the retainage

3

because of its "supposed need to protect itself from (i) lien claims from unpaid subcontractors—namely B&B and Anchor Fence, and (ii) a *potential* lien claim against the County by Metra's precast concrete supplier, Oldcastle Precast Inc. ("OPI")." (Pl.'s 56.1 ¶ 19.) Plaintiff asserts that these liens, and possible liens, have no bearing on payment under the Contract. Specifically, Plaintiff asserts that the B&B lien was bonded off in accordance with § 21 of the New York Lien Law, and thus the County never faced exposure from the lien. (*See id.* ¶ 21.) Moreover, the County issued a joint check to Metra and B&B out of the $426,741.50 in retainage to discharge the lien and paid B&B in full on August 28, 2017. (*See id.* ¶¶ 22–23.) Therefore, according to Plaintiff, B&B's lien has been discharged and paid in full. (*See id.* ¶ 27.)

Plaintiff similarly disputes the presence of the Anchor Fence lien as a basis to withhold the retainage. There, Metra and Anchor Fence continue to dispute the lien balance of $10,878.80. (*See id.* ¶ 28.) Metra has posted a $15,845.50 lien bond, (*see id.* ¶ 29; Dioslaki Aff. Ex. O ("Anchor Fence Lien Bond")), and has thus bonded off the entire amount of the lien at more than the claim's value. (*See id.* ¶ 30.) Thus, Plaintiff contends that the lien has been discharged pursuant to the New York Lien Law. (*See id.*)

Finally, Plaintiff notes that, in so far as OPI's claim is concerned, OPI has not even filed a lien claim, or any claim for that matter, against the County for work done under the Contract. (*See id.* ¶ 31.) Instead, OPI has initiated an arbitration against Metra and a lawsuit against Metra's payment bond surety, Liberty Mutual Insurance Company ("Liberty"), with regard to work done on the Project. (*See id.*) According to the County, that arbitration resulted in an award in favor of OPI for an amount in excess of $300,000, which has yet to be paid. (*See* Def.'s 56.1 Resp. ¶ 31.) Plaintiff notes that this claim is not against the County, nor has any claim been

4

asserted against the County by OPI. (*See* Pl.'s 56.1 ¶ 33.) Moreover, Plaintiff claims that the disputed amount is not a lien, and thus the County faces no exposure regardless, given Liberty's payment bond in the amount of $8,900,000 for payment to OPI in the event that "there are monies due and owing OPI in connection with the Project, and . . . Metra fails to make those payments." (*Id.* ¶ 32.) Liberty has also issued a "formal consent of surety agreeing that the County's payment of Metra's earned retention would in no way impair Liberty's obligations to OPI . . . under Liberty's Payment Bond." (*Id.* ¶ 34.)

As to the outstanding claims, the County notes that both Anchor Fence and OPI have yet to be paid for their work under the contract as required, which is reflected in the Contractors Affidavit of Payment submitted by Plaintiff. (*See* Def.'s 56.1 Resp. ¶ 34.) The crux of the County's position regarding the retainage is that it "withheld and continues to withhold retainage for reasons other than the [Anchor Fence and B&B] lien[s]. Metra failed to comply with Contract prerequisites to payment of the amounts lawfully retained by the County." (*Id*. ¶ 19.) Section 109–09 of the Contract requires submission of four forms: (1) Agreement of Surety Company to Final Payment; (2) Contractors Affidavit of Payment; (3) Certificate of Substantial Completion; and (4) General Release. (*See* Pl.'s 56.1 ¶ 38; Def.'s 56.1 Resp. ¶ 38.) The County does not dispute that Plaintiff has submitted both the Agreement of Surety Company (Liberty) to Final Payment and the Certificate of Substantial Completion. (*See* Pl.'s 56.1 ¶¶ 39, 41; Def.'s 56.1 Resp. ¶¶ 39, 41.) Plaintiff claims that it has provided the County with the Contractor's Affidavit of Payment on August 9, 2016, (*see* Pl.'s 56.1 ¶ 40), although the County argues that this Affidavit "d[oes] not state and represent that all bills for labor or material have been paid in full," (Def.'s 56.1 Resp. ¶ 40). Moreover, the County contends that the outstanding claims by

5

both Anchor Fence and OPI are indeed impediments to payment of the retainage, particularly because Plaintiff cannot affirm that all claims against it have been settled or that all subcontractors have been paid in full, as required under the Contract and under § 139–f of the New York State Finance Law. (Rigg. Aff. ¶¶ 12–13.)

The Parties agree that Plaintiff has submitted a "draft form of the County's standard form General Release," (Pl.'s 56.1 ¶ 42; Def.'s 56.1 Resp. ¶ 42), but the Parties dispute why the final General Release has not yet been submitted. Plaintiff claims that the form could only be submitted as a draft because, "despite numerous requests, the County ignored its obligation under Section 109–09 to make a final inspection of all work done under th[e] contract." (Pl.'s 56.1 ¶ 43.) Plaintiff states that it cannot complete the outstanding dollar amount portions of the General Release until the County "conducts the inspection and provides Metra with the County's final inspection quantity." (Pl.'s 56.1 ¶¶ 44–45.) The County disputes this characterization, stating that it has "never asserted that it was withholding payment due to lack of a final inspection of all field work," (Rigg Aff. ¶ 17), and that it has provided the requisite closing documents to Plaintiff with a completely filled out General Release form, (*see id.* ¶ 18). According to the County, the calculation of the amount due to Metra is $354,345.39, which accounts for a deduction of $93,427.15 due to County Overtime and Holiday Inspection Charges incurred pursuant to the Contract and not disputed by Plaintiff. (*See id.* ¶ 18, Ex. 4 ("County Closing Documents").)

Plaintiff initially sought the full $426,741.50 being withheld by the County. (Pl.'s 56.1 ¶ 11.) That amount was reduced by $32,498.13 to $394,243.37 based on the joint check to B&B in satisfaction of the lien on August 28, 2017. (*Id.*) Now, for purposes of this Motion, Plaintiff

is seeking the release of $300,816.22 in retainage, reflecting an acquiescence, for purposes of this Motion only, of the County's claim for $93,427.15 in inspection expenses. (Pl.'s Reply in Supp. of Mot. for Summ. J. ("Pl.'s Reply") 1 & n.1 (Dkt. No. 29).)

B. Procedural History

Plaintiff filed its Complaint on May 11, 2017, (*see* Compl. (Dkt. No. 1)), and Defendant filed its Answer on June 20, 2017, (*see* Answer (Dkt. No. 7)). Shortly thereafter, Plaintiff filed a pre-motion letter on August 2, 2017, (*see* Letter from Peter M. Kutil, Esq. to Court (Aug. 2, 2017) (Dkt. No. 8)), which was corrected on August 7, 2017, (*see* Letter from Peter M. Kutil, Esq. to Court (Aug. 7, 2017) (Dkt. No. 11)). Defendant filed its response to Plaintiff's letter on August 11, 2017, (*see* Letter from Matthew G. Parisi, Esq. to Court (Aug. 11, 2017) (Dkt. No. 13)), and the Court thereafter scheduled a pre-motion conference for October 11, 2017, (*see* Order (Dkt. No. 14)). At this October 11, 2017 conference the Court adopted a briefing schedule for Plaintiff's Motion for Partial Summary Judgment. (*See* Mot. Scheduling Order (Dkt. No. 23).) Plaintiff filed its Partial Motion and accompanying papers on October 23, 2017. (*See* Dkt. Nos. 24–27.) Defendant filed its Opposition on November 17, 2017, (*see* Dkt. No. 28), and Plaintiff filed its Reply on December 1, 2017, (*see* Dkt. No. 29).

## II. Discussion

A. Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same). "In determining whether summary judgment is appropriate," a court must

is seeking the release of $300,816.22 in retainage, reflecting an acquiescence, for purposes of this Motion only, of the County's claim for $93,427.15 in inspection expenses. (Pl.'s Reply in Supp. of Mot. for Summ. J. ("Pl.'s Reply") 1 & n.1 (Dkt. No. 29).)

B. Procedural History

Plaintiff filed its Complaint on May 11, 2017, (*see* Compl. (Dkt. No. 1)), and Defendant filed its Answer on June 20, 2017, (*see* Answer (Dkt. No. 7)). Shortly thereafter, Plaintiff filed a pre-motion letter on August 2, 2017, (*see* Letter from Peter M. Kutil, Esq. to Court (Aug. 2, 2017) (Dkt. No. 8)), which was corrected on August 7, 2017, (*see* Letter from Peter M. Kutil, Esq. to Court (Aug. 7, 2017) (Dkt. No. 11)). Defendant filed its response to Plaintiff's letter on August 11, 2017, (*see* Letter from Matthew G. Parisi, Esq. to Court (Aug. 11, 2017) (Dkt. No. 13)), and the Court thereafter scheduled a pre-motion conference for October 11, 2017, (*see* Order (Dkt. No. 14)). At this October 11, 2017 conference the Court adopted a briefing schedule for Plaintiff's Motion for Partial Summary Judgment. (*See* Mot. Scheduling Order (Dkt. No. 23).) Plaintiff filed its Partial Motion and accompanying papers on October 23, 2017. (*See* Dkt. Nos. 24–27.) Defendant filed its Opposition on November 17, 2017, (*see* Dkt. No. 28), and Plaintiff filed its Reply on December 1, 2017, (*see* Dkt. No. 29).

## II. Discussion

A. Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same). "In determining whether summary judgment is appropriate," a court must

"construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted); *see also Borough of Upper Saddle River v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration, citation, and internal quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (internal quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . ."). And, "[w]hen opposing parties tell two different

8

stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (internal quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (internal quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (internal quotation marks omitted). However, a district court should consider "only evidence that would be admissible at trial." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

B. Analysis

On the record before the Court, there remain factual disputes that preclude an award of summary judgment as to whether $300,816.22 in retainage must be paid to Plaintiff. Section 139–f of the New York State Finance Law provides, in relevant part:

> When the work or major portions thereof as contemplated by the terms of the contract are substantially completed, the contractor shall submit to the public owner and/or his agent a requisition for payment of the remaining amount of the contract balance. Upon receipt of such requisition the public owner shall approve and

9

> promptly pay the remaining amount of the contract balance less two times the value of any remaining items to be completed and an amount necessary to satisfy any claims, liens or judgments against the contractor which have not been suitably discharged.

N.Y. State Fin. Law § 139-f(1). Pursuant to this provision, Plaintiff contends that it is thus entitled to recover the full $300,816.22 in unpaid retainage from Defendant. Plaintiff is correct that this is a "mandate" and "not a suggestion." (Pl.'s Mem. in Supp. of Mot. for Part. Summ. J. ("Pl.'s Mem.") 2 (Dkt. No. 25).) Yet, Plaintiff's reading of that mandate ignores the second clause, which provides that such payments may be "less . . . an amount necessary to satisfy any claims, liens or judgments against the contractor which have not been suitably discharged." N.Y. State Fin. Law § 139–f(1).

The Court agrees that Anchor Fence's lien against Plaintiff has been bonded off at 110% of the lien's value in accordance with § 21(5) of the New York Lien Law, (Anchor Fence Lien Bond), and thus has been discharged, *see* N.Y. Lien Law § 21(5) ("Either before or after the beginning of an action by a contractor or subcontractor executing a bond or undertaking in an amount equal to one hundred ten percent of such lien conditioned for the payment of any judgement which may be recovered in an action to enforce the lien . . . shall be sufficient [to discharge a lien].").

By contrast, Plaintiff does not dispute that there is still an outstanding claim against it by OPI for work done on the Project. Instead, Plaintiff asserts that because this claim is not against the County, that outstanding claim is not a basis for withholding the retainage. (*See* Pl.'s 56.1 ¶ 33.) However, the statutory language is clear that the public owner may withhold "an amount necessary to satisfy *any claims*, liens or judgments *against the contractor* which have not been suitably discharged." N.Y. State Fin. Law § 139–f(1) (emphasis added). Thus, it cannot be that

Plaintiff is due the entirety of the retainage, inclusive of OPI's $300,000 outstanding arbitration claim. Instead, the plain language permits the public owner, here Defendant, to withhold any payment of retainage where there are "identifiable claims, liens or judgments against the []contractor and the claims, liens or judgments have not been suitably discharged." *Pottstown Fabricators, Inc. v. Manshul Const. Corp.*, 927 F. Supp. 756, 757 (S.D.N.Y. 1996). Akin to *Pottstown Fabricators*, which involved a suit by a subcontractor against a general contractor for withheld retainage pursuant to § 139–f, the statute is clear that any payment made from retainage—be it from a public owner to a general contractor or a general contractor to a subcontractor—"may be less an amount necessary to satisfy any claims, liens or judgments against the subcontractor which have not been suitably discharged." *Id.* (internal quotation marks omitted). As in the relationship between a subcontractor and a general contractor, the public owner cannot be forced to pay the full retainage to a general contractor when there remain outstanding claims against that general contractor for work done pursuant to the Contract would "render effectively meaningless the statute's grant to the [public owner] of the right to withhold payments under certain circumstances." *Id.*

Plaintiff's characterization of OPI's claim as an "unasserted [sic], theoretical claim[] for which the County could never face exposure," (Pl.'s Mem. 7), misses the mark. OPI's claim is still outstanding and unpaid, and thus would appear to be undischarged as to the contractor. Moreover, whether the County would face any exposure from OPI's claim is beside the point. Section 139–f(1) does not require that the claim be asserted against the public owner, nor does it require that the public owner face liability flowing from the claim. Rather, the statute provides that the existence of "*any claims*, liens or judgments against *the contractor* which have not been

11

suitably discharged" is sufficient grounds to withhold retainage to cover the value of such claims, liens or judgments against the contractor. N.Y. State Fin. Law § 139–f(1) (emphasis added). Thus, there is a dispute of fact as to what retainage, if any, Plaintiff would be entitled to from Defendant given OPI's outstanding claim.

To the extent that Plaintiff argues that OPI's claim has been suitably discharged, that is also in dispute. Plaintiff contends that Liberty's payment bond in the amount of $8,900,000 would "provide[] for payment to OPI in the event that (i) there are monies due and owing to OPI in connection with the Project, and (ii) Metra fails to make those payments." (Pl.'s Mem. 7.) But Plaintiff cites to no provision of New York law that would indicate that Liberty's general Payment Bond would satisfactorily discharge a claim against Plaintiff. The Payment Bond "jointly and severally . . . bind[s]" both Plaintiff and Liberty to "pay for labor, materials and equipment," (Dioslaki Aff. Ex. M ("Payment Bond") § 1), and generally "indemnif[ies] and hold[s] harmless the [County] against a duly tendered claim, demand, lien or suit," brought against *the County*, (*id.* § 4). The Payment Bond does not, however, wholly indemnify *Plaintiff* against claims brought against it by subcontractors or other claimants. Rather, if a claim is brought against Plaintiff by a claimant who is "employed by or ha[s] a direct contract with [Plaintiff]," (*id.* § 5.2), Liberty is only required to "[p]ay or arrange for payment of any undisputed amounts," determined solely at the discretion of Liberty, (*id.* § 7.2), so long as the claimant has "sent a Claim to [Liberty]," (*id.* § 5.2). Thus, as it is not clear in the record whether OPI's claim has been properly sent to Liberty, nor is it clear that Liberty is obligated to pay *any* of the $300,000 claim: there remains an issue of fact as to what portion, if any, of this claim has been suitably discharged by Plaintiff.

12

Even if the Court were to determine as a matter of law that the requirements of § 139–f(1) were clearly and unequivocally satisfied, there remains an issue of fact as to whether the terms of the Contract have been met. New York courts have observed that the "claimant is only entitled to the retainage if the contract has been performed in accordance with the plans and specifications agreed upon between the parties." *Fehlhaber Corp. v. State of New York*, 419 N.Y.S.2d 773, 779 (App. Div. 1979); *C.O. Falter Const. Corp. v. New York State Thruway Auth.*, 2008 WL 11311901 (N.Y. Ct. Cl. 2008) (same). Neither Party has put forth any case law that those terms of the contract regarding final acceptance that do not conflict with § 139–f(1) should be rendered invalid, and indeed, there remains a dispute as to whether Plaintiff has complied with the contract's terms regarding final payment. *See, e.g.*, *R.P. Brennan Gen. Contractors & Builders, Inc. v. Bovis Lend Lease LMB, Inc.*, 849 N.Y.S.2d 545, 546 (App. Div. 2008) ("No reason appears why [the] defendant could not subsequently rely on the . . . provisions of the General Conditions after it had initially denied payment solely on the basis of an existing subcontractor's lien . . . that was soon thereafter satisfied.").

First, the Parties dispute whether the Contractors Affidavit of Payment submitted by Plaintiff was sufficient. (Pl.'s 56.1 ¶ 40; Def.'s 56.1 Resp. ¶ 40.) This dispute effectively flows out of the aforementioned dispute over the Anchor Fence and OPI claims against Plaintiff. The Contract states, in relevant part, that Plaintiff:

> shall provide a release of receipt from each named subcontractor and material man indicating payment in full. If any subcontractor refuses to furnish a release or receipt in full, the Contractor may furnish a bond to the County, to indemnify it against any lien.

(Revised Specifications 28.) As an initial matter, there is no dispute that Plaintiff has failed to provide a release from each named subcontractor indicating payment in full, as both Anchor

13

Fence and OPI have outstanding claims for work done on the Project. (Pl.'s 56.1 ¶¶ 28–29, 31–33; Def.'s 56.1 Resp. ¶¶ 28–29, 31–33.) Again, while the Anchor Fence lien may be bonded off, (Anchor Fence Lien Bond), the OPI claim against Plaintiff flowing from the arbitration award remains outstanding, and there does not appear to have been an attempt to discharge that claim with anything but the generic Payment Bond, (Def.'s 56.1 Resp. ¶ 34). Accordingly, there is a material dispute as to whether Plaintiff has complied with this contractual prerequisite to payment, which itself is tethered to Plaintiff's obligation under § 139–f(1) to discharge all claims prior to full payment of any retainage.

Additionally, there is no dispute that Plaintiff has failed to submit a completed General Release with the County. (Pl.'s 56.1 ¶¶ 42–45; Def.'s 56.1 Resp. ¶¶ 42–45.) Plaintiff claims that this is only due to the County's intransigence, in that the County has, "despite numerous requests . . . ignored its obligation under Section 109–09 [of the Contract] to make 'a final inspection of all work done under th[e] [C]ontract.'" (Pl.'s 56.1 ¶ 43.) Thus, Plaintiff cannot calculate the final dollar amount that is subject to the General Release. (*Id.* ¶¶ 44–45.) The County, by contrast, claims that it has "filled out the General Release . . . included the amount . . . [and] provided a calculation of the amount of the total payments due Metra," with regard to the General Release. (Rigg Aff. ¶ 18.) It may be that "[i]nterpretations of final acceptance provisions that vest the Owner with the ability to endlessly defer the contractor's right to payment must be avoided," (Pl.'s Mem. 9 (citing *Superb Gen. Contr. Co. v. City of New York*, 833 N.Y.S.2d 64, 66 (App. Div. 2007)), but the record is not clear that this is the case before the Court. Indeed, the Parties dispute whether Defendant is withholding its final acceptance at all, as Defendant claims it is *Plaintiff* which refuses to comply with the final acceptance provisions by

14

failing to submit the completed General Release provided by Defendant. (Rigg Aff. ¶¶ 17–18.) Such a factual dispute as to what constitutes compliance with the Contract, and whether the Contract has been complied with at all, precludes summary judgment on Plaintiff's claim for retainage. *See Tangorre v. Mako's, Inc.*, No. 01-CV-4430, 2003 WL 470577, at *10 (S.D.N.Y. Jan. 6, 2003) (noting that a factual dispute regarding how and when the parties were to comply with the terms of the contract precluded summary judgment on a breach of contract claim); *Gen. Auth. for Supply Commodities, Cairo, Egypt v. Ins. Co. of N. Am.*, 951 F. Supp. 1097, 1112 (S.D.N.Y. 1997) ("[T]he parties' competing arguments regarding the issue of whether [there was a] breach[] [of] the [c]ontract demonstrate[s] the existence—not the absence—of genuine issues of material fact regarding this alleged breach.").

### III. Conclusion

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is denied. The Court will hold a conference on November 9, 2018 at 10:00 am to discuss the status of the case. The Clerk of Court is respectfully directed to terminate the pending Motion. (Dkt. No. 24.)

SO ORDERED.

DATED: September 28 2018
          White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

15